IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FOREST SERVICE EMPLOYEES FOR
ENVIRONMENTAL ETHICS,
DAN BECKER,
        Plaintiffs,

v.

UNITED STATES FOREST SERVICE,
        Defendant,

D.R. JOHNSON LUMBER COMPANY,
        Defendant-Intervenor.

CV. 05-553-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiffs challenge the Easy Fire Recovery Project in the Malheur National Forest. Plaintiffs' complaint alleges the U.S. Forest Service violated the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600 et seq., the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 et seq.

Page 1 - FINDINGS AND RECOMMENDATION

This court has jurisdiction under 28 U.S.C. § 1331.

On August 1, 2005, D.R. Johnson's motion to intervene was granted.[1] On August 4, 2005, plaintiffs' motion for preliminary injunction and temporary restraining order was denied. On reconsideration on August 11, 2005, it again was denied. Plaintiffs appealed the denial of preliminary injunction to the Ninth Circuit on August 23, 2005. On December 29, 2005, that court found the appeal moot because all the trees in question had been cut.

On September, 22, 2005, the Forest Service's motion to dismiss plaintiff Forest Service Employees for Environmental Ethics (FSEEE) was granted. Plaintiff Becker filed a motion for summary judgment and injunctive relief in November 2005 and defendant and defendant-intervenor filed cross-motions for summary judgment as well as a motion to strike in December 2005. Oral argument was held on March 13, 2006. For the reasons set forth below, this court recommends that this case be dismissed as moot and that all motions for summary judgment and defendant's motion to strike be denied as moot.

## LEGAL STANDARD

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Northwest Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988) (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). A "live" controversy exists "as long as effective relief may still be available to counteract the effects of the violation." Id. at 1245. Therefore, even if the alleged illegal activity has been completed, the case is not moot if the court can provide effective relief for the violation. Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir. 2002); see also Cantrell v. City of Long

---

[1] The contract to log the Easy Project was awarded to D.R. Johnson Lumber Company.

Page 2 - FINDINGS AND RECOMMENDATION

Beach, 241 F.3d 674, 678 (9th Cir. 2001); Headwaters v. BLM, 893 F.2d 1012, 1015 (9th Cir. 1989).

## FACTUAL BACKGROUND

The Easy fire burned 5,839 acres in July 2002 on the Malheur National Forest. In response, the U.S. Forest Service (Forest Service) began planning the Easy Fire Recovery Project (Easy Project) with the multiple purposes of re-establishing burned old-growth areas, capturing economic value of dead and dying trees through salvage operations, re-vegetation of the burned area, reduction of fuel load to avoid future severe wildfires, and reducing road-related impacts on wildlife. Formal environmental review began in February 2003. A draft environmental impact statement (EIS) was released in October 2003 for public review and comment followed by the final EIS. On September 28, 2004, the Forest Service issued its Record of Decision (ROD) selecting Alternative 3 which included a salvage component on approximately 1,298 acres, logging 6.3 million board feet of dead and dying trees. The ROD permits removal of fire-killed trees and fire-burned trees expected to die within one to five years. The ROD also amends the Malheur Forest Plan to designate new suitable old growth areas and replacement old growth areas to compensate for areas destroyed by the fire.

To designate dead or dying trees for harvest in the Easy Project, the Forest Service relied on the Scott Mortality Guidelines (Scott Guidelines), a tree mortality rating system developed by the Forest Service to determine the probability that fire-injured trees will survive. The Forest Service calibrated the Scott Guidelines for use with the specific trees found in the Easy Project area and the rating system was field-verified by the authors of the Scott Guidelines and Forest Service specialists.

Page 3 - FINDINGS AND RECOMMENDATION

Eastside Forest Plan Amendment #2 (Eastside Screens), an amendment to the Malheur National Forest's Land and Resource Management Plan (LRMP), provides management direction by establishing riparian, ecosystem and wildlife standards.  The wildlife standard, which applies to fire salvage projects including the Easy Project, directs the Forest Service to "[m]aintain all remnant late and old seral and/or structural live trees $\geq$ 21" dbh[2] that currently exist within stands proposed for harvest activities."  Policy Administrative Record (AR) at 253.[3]

Plaintiff Becker[4] filed his complaint on April 22, 2005, alleging the Forest Service violated NFMA and NEPA.[5]  He moved for a temporary restraining order (TRO)/preliminary injunction (PI) on July 25, 2005.  After an evidentiary hearing, Judge King denied the motion for a TRO/PI, and concluded that the Forest Service's interpretation of dead trees to include those trees that are dying and will be dead within five years is reasonable and, therefore, not arbitrary and capricious.  <u>FSEEE v. U.S. Forest Service</u>, No. CV 05-555-KI (sic),[6] 2005 WL 1950237 (D. Or. Aug. 11, 2005).  He concluded that the Eastside Screens would not preclude a fire salvage project that included trees that were 21" dbh as long as a "reasonable determination" is made

---

[2]Diameter breast height.

[3]The Forest Service filed separate Policy and Project Administrative Records.  Citations are to the page numbers in each Administrative Record.

[4]Forest Service Employees for Environmental Ethics was an original plaintiff in this case but was dismissed on September 22, 2005 for failure to exhaust administrative remedies in not administratively appealing this project to the agency (#59).

[5]The court notes that Becker failed to present any arguments in support of his NEPA claim and the Forest Service argues that this claim is waived.  Because this court will not reach the merits of this case, it is not necessary to address this argument.

[6]The Westlaw citation inaccurately lists the case number as CV 05-555; the correct number is CV 05-553.

beforehand that the trees will die within five years. Id. at *4. He also concluded that plaintiffs were not likely to prevail in their challenges to the Forest Service's use of the Scott Guidelines. Id. at *5. Plaintiffs appealed the denial of preliminary injunctive relief to the Ninth Circuit Court of Appeals and on December 29, 2005, that court dismissed the appeal as moot based on the fact that the timber harvest was complete. Defendant-Intervenor's Notice of Supplemental Authority, Exh. A.

Becker's motion for summary judgment on his NFMA claim raises three arguments: that the directive in Eastside Screens against logging "live" trees greater than 21" dbh prohibits salvaging fire-burned trees that have been evaluated as dying under the Scott Guidelines; that the purpose and intent of Eastside Screens is to maintain forest management options in the short-term which precludes harvest of fire-burned trees that have been evaluated as dying under the Scott Guidelines; and that there has been no "reasonable" or "professional" determination that trees marked for salvage under the Scott Guidelines will be dead in five years and thus cutting those trees violates NFMA.[7]

As of December 9, 2005, all harvest activities for the Easy Project were complete, meaning all trees marked for salvage have been cut, loaded and hauled away.

## ANALYSIS

The Forest Service and D.R. Johnson argue that this case is moot because the trees at

---

[7] Judge King's order denying PI includes the requirement that a "reasonable determination" be made that the fire-burned trees will die within five years before they are cut. 2005 WL 1950237 at *4. The Forest Service directive on which Judge King relied explained that dying trees can be counted as snags if there is a "professional determination" that the tree will definitely be dead within five years. Id. Becker's argument is that the Scott Guidelines estimate the probability of tree mortality without making this required determination.

Page 5 - FINDINGS AND RECOMMENDATION

issue in the Easy Project have been cut and this court can no longer order any of the relief sought in plaintiff's complaint. Becker argues that because effective relief may still be ordered by the court, the controversy in this case remains live and the case is not moot. The specific relief Becker suggests includes: ordering the Forest Service to assess the amount of remaining old growth trees in forests in the Malheur National Forest or eastside forests and to study the long-term implications of continued logging of these remaining old trees; ordering the Forest Service to mitigate or adjust the impact of future timber sales; ordering the Forest Service to reduce slightly the maximum diameter limit for trees on future sales in the Malheur National Forest to reflect the number of large trees that allegedly were illegally cut in the Easy project and then allowing these slightly smaller trees to grow into the larger trees that are offered protection by the wildlife standard in the Eastside Screens. Plaintiff's Reply at 6. Because this court finds that it can not order any effective relief now that all the trees in the Easy Project have been cut, this case should be dismissed as moot.

The completion of a timber harvest project does not necessarily moot a case in which plaintiffs have challenged the project under NFMA. Courts have found effective relief was available to plaintiffs and ordered various forms of mitigation in similar environmental cases in this circuit. In most of those cases, however, a specific form of relief relating to an animal species or other targeted mitigation guided the court's decision. See, e.g., Cantrell v. City of Long Beach, 241 F.3d 674, 678-79 (9th Cir. 2001) (finding a court could order the city to create new nesting and forage areas to mitigate damage to birds' habitat); Northwest Envtl. Def. Center v. Gordon, 849 F.2d 1241, 1245 (9th Cir. 1988) (finding a court could order an agency to allow a greater number of salmon to spawn in 1989 as relief for damage caused by violations in 1986).

Page 6 - FINDINGS AND RECOMMENDATION

Here, the relief Becker suggests lacks the specificity required to remedy the alleged violation.

The court's mootness analysis in Headwaters, Inc. v. BLM, 893 F.2d 1012 (9th Cir. 1989), provides a useful framework. In Headwaters, another logging case in which the trees had been cut and mootness was argued, the court explained that plaintiff's injunctive claim was moot because all trees had been logged, and that declaratory relief was not available because the plaintiff had framed its case narrowly such that "the policies against which it seeks a declaration can have no effect on the [timber sale in question which had been logged]." Id. at 1015. The court also found that application of the disputed policies to future sales was too uncertain to permit declaratory adjudication. Id. at 1015-16. Because Becker's claim for relief under NFMA suffers from these same deficiencies, this court finds that Becker's NFMA claim is moot.

Becker relies on Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059 (9th Cir. 2002) for his argument that this court still may order some relief and that this case is not moot. In Neighbors, environmental groups challenged a timber sale, logging was completed, and the Forest Service argued that the case was moot. The Ninth Circuit found that various types of relief could still be granted including ordering the agency to study the sale's impacts on species viability, mitigate impacts in both the areas of the sale and elsewhere in the forest, adjust future timber plans to compensate for the allegedly unlawful one in question, or monitoring bird population trends and planning recovery efforts. Id. at 1066. This court does not find Neighbors controlling here because one of plaintiffs' central arguments in that case relied on the presence of the pileated woodpecker, a Management Indicator Species (MIS) for old growth habitat. The Forest Service was responsible for ensuring species viability through its forest-wide planning and plaintiffs sought remedies from the court that would mitigate impacts on species viability, a

specific and concrete remedy.  As the court concluded in declining to find the case moot, "Because the harm to old growth species[8] may yet be remedied by any number of mitigation strategies . . . the case is live."  Id.  Here, Becker seeks relief based on alleged misapplication of a Forest Service directive, Eastside Screens, in the Easy Project area, and use of the Scott Guidelines to determine post-fire tree mortality on trees greater than 21" dbh in the Easy Project area.  Becker alleges no species viability claim and the claims he does allege are specific to the dying trees in the Easy Project area as opposed to any larger area.  Because the trees in question have been cut, this court can no longer order any effective relief that will mitigate the harm Becker alleges.[9]

///

///

///

///

///

## CONCLUSION

---

[8]Pileated woodpecker and great gray owl.

[9]This court notes plaintiff's filing of supplemental authority on March 24, 2006, and the responses of defendant and defendant-intervenor.  The Ninth Circuit's decision in Earth Island Institute v. U.S. Forest Service, No. 05-16776 (9th Cir. March 24, 2006) does not change this court's recommendation.  The logging sales contract for one of the projects in that case granted the timber company the right to continue to cut trees thus precluding mootness.  Also, that case was based in large part on species-specific claims, in that the court found that case was not moot based on relief that could include monitoring of California spotted owl, obtaining more accurate population surveys of MIS bird species, and revising scientific guidelines that the court found to be misleading, a different argument than plaintiff makes regarding the Scott Guidelines in the case before this court.

Page 8 - FINDINGS AND RECOMMENDATION

For the foregoing reasons, this court recommends dismissing this case as moot and denying plaintiff's motion for summary judgment (#68), defendant's motion for summary judgment (#79) and motion to strike (#77), and defendant-intervenor's motion for summary judgment (#83) as moot.  A judgment should be prepared dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due April 28, 2006 .  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 13th day of April, 2006.

    /s/ Paul Papak  
Honorable Paul Papak  
United States Magistrate Judge